UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL KELLEY, )<br>)<br>*Plaintiff*, )<br>)<br>vs. )<br>)<br>NANCY BERRYHILL,[1] Acting Commissioner )<br>of the Social Security Administration, )<br>)<br>*Defendant*. ) | No. 1:16-cv-01536-JMS-DKL |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Michael Kelley applied for disability insurance benefits and supplemental security income from the Social Security Administration ("SSA") on February 26, 2013, alleging an onset date of March 31, 2010. [Filing No. 14-5 at 2-14.] His applications were denied initially on June 26, 2013, [Filing No. 14-4 at 2-19], and upon reconsideration on August 21, 2013, [Filing No. 14-4 at 21-26]. Administrative Law Judge Lisa Martin (the "ALJ") held a hearing on November 12, 2014, [Filing No. 14-2 at 30-53], and issued a decision on February 13, 2015, concluding that Mr. Kelley was not entitled to receive disability insurance benefits or supplemental security income, [Filing No. 14-2 at 13-22]. The Appeals Council denied review on April 25, 2016. [Filing No. 14-2 at 2-4.] Mr. Kelley then filed this civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.]

---

[1] The Court has substituted Nancy Berryhill as the proper Defendant in this action, given that she became the Acting Commissioner of the Social Security Administration on January 23, 2017. *See* "Meet Our New Acting Commissioner," Social Security Administration Blog, available at http://blog.ssa.gov/meet-our-new-acting-commissioner (last visited March 27, 2017).

1

# I.
## BACKGROUND

Mr. Kelley was thirty six years old when he filed for disability insurance benefits and supplemental security income. [Filing No. 14-5 at 2.] He has previous work experience as a forklift driver, a construction worker, a tool rental clerk, and an airport worker. [Filing No. 14-2 at 33-36; Filing No. 14-2 at 48-49.][2] Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4), the ALJ issued an opinion on February 13, 2015, determining that Mr. Kelley was not entitled to receive disability insurance benefits or supplemental security income. [Filing No. 14-2 at 13-22.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Kelley had not engaged in substantial gainful activity[3] since March 31, 2010, the alleged onset date. [Filing No. 14-2 at 15.]

- At Step Two of the analysis, the ALJ found that Mr. Kelley suffers from the following severe impairments: cervical disorder and lumbar spine disorder with radiculopathy. [Filing No. 14-2 at 15-16.]

- At Step Three of the analysis, the ALJ found that Mr. Kelley did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 14-2 at 16.]

- After Step Three but before Step Four, the ALJ found that Mr. Kelley has the residual functional capacity ("RFC") to perform work at the light exertional level as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b), with the following limitations: "[T]he claimant needs a brief, one to two minute, opportunity as often as every 30 minutes to change positions. He must not perform ladders, ropes, or scaffolds climbing, and he is limited to occasional postural motions otherwise. He must not perform work around dangerous work

---

[2] Both Mr. Kelley and the Commissioner detailed pertinent facts in their briefs, and the opposing party did not dispute those facts. Because those facts implicate sensitive and otherwise confidential medical information concerning Mr. Kelley, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

hazards including unprotected heights and exposed machinery. Because of pain symptoms causing some distractions and preventing detailed decision making, the claimant is limited to routine, uninvolved tasks not requiring a fast assembly quota pace, and not requiring more than occasional work interactions with coworkers, supervisors, and public." [Filing No. 14-2 at 17-20.]

- At Step Four of the analysis, the ALJ found that Mr. Kelley is unable to perform any past relevant work. [Filing No. 14-2 at 20.]

- At Step Five of the analysis, the ALJ found that considering Mr. Kelley's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Mr. Kelley can perform – specifically, ticket taker, price marker, and mailroom clerk. [Filing No. 14-2 at 21.]

## II.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id*. at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable

deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the

4

appropriate remedy.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).  An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion."  *Id.* (citation omitted).

## III.
### DISCUSSION

Mr. Kelley challenges the ALJ's decision on three grounds: (1) that the ALJ did not adequately analyze whether Mr. Kelley met or medically equaled Listing 1.04, [Filing No. 16 at 4-6]; (2) that the ALJ's credibility determination was flawed, [Filing No. 16 at 6-7]; and (3) that the ALJ did not adequately consider all medical evidence in connection with her RFC analysis, [Filing No. 16 at 7-10].  The Court will address the issues in turn.

### A.  Failure to Fully Consider Listing 1.04

Mr. Kelley argues that the ALJ "provided only a perfunctory analysis using boilerplate language during her evaluation at step three (3) of the process," and "fail[ed] to properly evaluate the evidence in comparison to the requirement to explain how exactly she concluded that [Mr. Kelley's] severe spinal conditions did not meet or equal the requirements of listing 1.04."  [Filing No. 16 at 5.]  Mr. Kelley argues that the ALJ only spent two sentences discussing whether he met or equaled Listing 1.04, so remand is appropriate "to insure that proper evaluation of whether or not [he] meets or equals listing 1.04 is performed."  [Filing No. 16 at 5-6.]  Mr. Kelley also contends that the ALJ did not address at all whether he medically equaled Listing 1.04, and also did not consult a medical expert or analyze the medical records on that issue.  [Filing No. 16 at 6.]

In response, the Commissioner argues that the ALJ found that there was no indication that Mr. Kelley could not ambulate effectively or that he had a spinal disorder or lumbar spinal stenosis

5

which are requirements for meeting Listing 1.04.[4] [Filing No. 21 at 13.] The Commissioner asserts that the ALJ adequately considered Listing 1.04 because she referred to the Listing by name and referred to some of the specific requirements that Mr. Kelley did not meet. [Filing No. 21 at 14.] The Commissioner also argues that it is Mr. Kelley's burden to show that his impairments meet or medically equal a listed impairment, and he has not met that burden. [Filing No. 21 at 14.] She notes that Mr. Kelley "offers no evidence that his impairments met or medically equaled the requirements for Listing 1.04,…[and] does not mention the Listing's requirements, much less offer any evidence that he met or medically equaled all of its requirements." [Filing No. 21 at 14.] As for medical equivalence, the Commissioner argues that the ALJ relied on "completed transmittal forms" from state agency medical consultants, which "constituted substantial evidence supporting the ALJ's Step Three finding as to medical equivalence." [Filing No. 21 at 15.]

On reply, Mr. Kelley details evidence he provided which he claims shows that he has a disorder of the spine resulting in compromise of a nerve root, evidence of neuro-anatomic distribution of pain, evidence of limitation of motion in the spine, evidence of motor loss, evidence of sensory or reflex loss, and evidence of a positive straight-leg raising test. [Filing No. 23 at 2-5.] He argues that he has met his burden of showing that he meets or medically equals Listing 1.04, and that the ALJ ignored the evidence that supported this conclusion. [Filing No. 23 at 5.]

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than [a] perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (citations omitted). The listings set forth the

---

[4] The Commissioner addresses the ALJ's findings regarding Listing 1.02 and Listing 1.04. [*See* Filing No. 21 at 13-16.] Because Mr. Kelley's Step 3 argument is limited to the ALJ's failure to properly consider Listing 1.04, [*see* Filing No. 16 at 4-6], the Court will address that listing only, and not the ALJ's findings related to Listing 1.02.

6

criteria for qualifying impairments. *Id.* (citing 20 C.F.R. § 404.1525(a)). "A claimant may also satisfy a listing by showing that his impairment is accompanied by symptoms that are equal in severity to those described in the Listing." *Minnick*, 775 F.3d at 935 (citing 20 C.F.R. § 404.1526). A determination of medical equivalence requires an expert's opinion on the issue. *Minnick*, 775 F.3d at 935 (citations omitted); 20 C.F.R. § 404.1526(c) ("When we determine if your impairment equals a listing, we consider…the opinion given by one or more medical…consultants designated by the Commissioner"); SSR 96-6p, 1996 WL 374180, *3 ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight").

Listing 1.04 describes spinal disorders resulting in compromise of a nerve root or the spinal cord, with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. *Minnick*, 775 F.3d at 935 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04). Evidence of nerve root compression is characterized by "neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test." *Minnick*, 775 F.3d at 935.

As to Listing 1.04, the ALJ stated "I assessed the claimant's impairments under § 1.00 Musculoskeletal System, but the medical evidence falls short of the criteria of the section. The record does not show that the claimant has…a spinal disorder characterized by nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis, as required by Medical Listing 1.04." [Filing No. 14-2 at 16.] While the ALJ discussed certain medical evidence later as part of her RFC analysis, she did not tie this evidence to her Listing determination and, more significantly, ignored

evidence that could have supported a finding that Mr. Kelley met or medically equaled Listing 1.04. The Court specifically notes the following medical evidence, which directly relates to the requirements of Listing 1.04:

- Spinal disorder characterized by lumbar spinal stenosis, supported by:

  o May 31, 2011 report of CT Scan, which notes mild and moderate canal stenosis and "bilateral foraminal stenosis." [Filing No. 14-10 at 22.]

- Neuro-anatomic distribution of pain, supported by:

  o August 17, 2010 examination by Dr. Scott Taylor where Mr. Kelley reported that he has "an aching burning pain, shooting across the back." [Filing No. 14-12 at 11.]

  o August 9, 2011 examination by Dr. Taylor, noting that Mr. Kelley has "burning pain down his back, hip and into the right lower extremity." [Filing No. 14-10 at 41.]

  o March 13, 2012 examination by Dr. Taylor, noting that Mr. Kelley has "tenderness and pain through the leg, back, and hip…, [and] difficulty with walking with favored weight-bearing on the left lower extremity…." [Filing No. 14-10 at 37.]

  o March 7, 2013 visit with Dr. Sarab Alfata at which Dr. Alfata noted that back pain "has radiated to the right ankle, right calf, right foot and right thigh." [Filing No. 14-10 at 63.]

- Limitation in motion of spine, supported by:

  o May 11, 2010 visit with Dr. Taylor indicating that Mr. Kelley's "range of motion of the spine is fairly good to about 60 degrees of forward bending. He could afford about 20 degrees of extension and 15 degrees of side bending with slight pain on end range of motion. Sciatic stretch test is positive on the right at 30 degrees, negative on the left." [Filing No. 14-10 at 49.]

  o March 3, 2011 independent medical examination by Dr. Robert Gregori, where Dr. Gregori noted that "[l]umbar mobility is reduced significantly, as he flexes to forty-five slowly with significant increasing central low back pain. Extension is barely to five degrees past neutral with severe increasing back and right leg pain. Lateral bending is ten degrees to the right and fifteen degrees to the left with the right lateral bending causing increased pain." [Filing No. 14-12 at 33.]

8

- o August 9, 2011 examination by Dr. Taylor, noting that Mr. Kelley's "[r]ange of motion allows 20 degrees of flexion, 10 of extension, 15 of side bending. His gait is antalgic with favored weightbearing on the left lower extremity," and "[h]e continues to have functional difficulties with standing, bending, walking activities." [Filing No. 14-10 at 41.]

- o July 29, 2013 disability examination form completed by Dr. Doshandra Nelson, where Dr. Nelson noted that Mr. Kelley's cervical forward flexion was "80," normal is "90," and he "used hands to climb back up." [Filing No. 14-10 at 89.]

- Motor loss (atrophy with associated weakness), supported by:

  - o March 3, 2011 independent medical examination by Dr. Gregori wherein Dr. Gregori noted that Mr. Kelly "had obvious pain behaviors, as he does have discomfort while sitting and repositions frequently and also has a moderately severe antalgic gait with decreased weightbearing on the right toe walking predominantly with a decreased stance phase on the right," and can "get up on his toes bilaterally but has some difficulty getting up on his heels on the right, as it causes radiating pain." [Filing No. 14-12 at 33.]

  - o July 29, 2013 disability examination form completed by Dr. Nelson, which states that Mr. Kelley was "[u]nable to walk on toes 2/2 loss of sensation in right foot," and had decreased sensory in his right lower extremity or foot. [Filing No. 14-10 at 87.]

- Accompanied sensory or reflex loss, supported by:

  - o May 11, 2010 notes from Dr. Taylor indicating that Mr. Kelley's right ankle reflex was "entirely absent." [Filing No. 14-10 at 48.]

  - o June 4, 2010 notes from medical examination by Dr. Taylor stating that "[r]eflexes absent at the right ankle." [Filing No. 14-10 at 46.]

  - o March 3, 2011 report from medical examination by Dr. Gregori stating that Mr. Kelley's reflex for "ankle jerks…on the right" is "0." [Filing No. 14-12 at 33.]

  - o March 13, 2012 noted from medical examination by Dr. Taylor stating that Mr. Kelley has "absent right reflex." [Filing No. 14-10 at 37.]

- Positive straight leg raising test, supported by:

  - o May 11, 2010 examination by Dr. Taylor showing "[s]ciatic stretch test is positive on the right at 30 degrees…." [Filing No. 14-10 at 49.]

- o June 4, 2010 examination by Dr. Taylor indicating "[s]traight leg raising is positive on the right at 30 degrees…." [Filing No. 14-10 at 46.]

- o August 17, 2010 examination by Dr. Taylor indicating "sciatic stretch test was mildly positive on the right...." [Filing No. 14-12 at 11.]

- o March 3, 2011 examination by Dr. Gregori showing "[s]it straight leg raise causes significant radicular pain on the right, as it does while supine at thirty degrees on the right." [Filing No. 14-12 at 33.]

- o March 13, 2012 examination by Dr. Taylor showing a "positive sciatic stretch test on the right." [Filing No. 14-10 at 37.]

The ALJ did not discuss any of this evidence in connection with her evaluation of Listing 1.04. When setting forth her RFC determination, the ALJ briefly discussed some of Mr. Kelley's medical providers, including stating that Dr. Taylor recommended steroid injections and physical therapy, noting that an electromyography "was within normal limits," but also stating that Mr. Kelley was still in "severe back pain" at a January 2012 visit and was limited in his movements. [Filing No. 14-2 at 18.] The ALJ ultimately gave Dr. Taylor's opinion only "some weight" because "the record does not document significant strength or sensation deficits that would suggest a need to perform only limited standing/walking in an 8-hour work day." [Filing No. 14-2 at 19.] The ALJ also stated that "given the claimant's lack of significant stretch or[ ] sensory deficits noted in the record, and given other opinions indicating the claimant can work 40 hours weekly, Dr. Gregori's opinion is given little weight." [Filing No. 14-2 at 19.]

The ALJ's analysis of this evidence is limited to Mr. Kelley's RFC determination. In other words, while the ALJ discussed some of the medical evidence in terms of whether Mr. Kelley should be limited to certain types of work, she did not first address that evidence to see whether it

indicated that Mr. Kelley met Listing 1.04.[5] Indeed, it would have been possible for the ALJ to conclude that Mr. Kelley still did not meet Listing 1.04, despite the evidence set forth above, if other, contradictory evidence is in the record. But the ALJ did not discuss this evidence at all in connection with Listing 1.04, so the Court cannot discern whether she considered it and, if so, why she rejected it. In short, the ALJ did not adequately address whether Mr. Kelley met Listing 1.04, and remand is warranted for that reason.

Mr. Kelley also argues that the ALJ failed to address whether he medically equaled Listing 1.04, and did not consult an expert regarding that determination. [Filing No. 16 at 6.] The ALJ did not address medical equivalency at all in her opinion, and must do so on remand. She should also ensure that she has consulted appropriate medical experts.

B.   **Other Issues**

Given that the Court finds remand is required based on the first issue Mr. Kelley has raised – that the ALJ did not adequately evaluate whether he met or medically equaled Listing 1.04 – the Court will not discuss the other issues he has raised in detail. As to the second issue Mr. Kelley raises, that the ALJ's credibility determination is flawed, he argues that the ALJ failed to consider why Mr. Kelley was not fully compliant with all available treatment measures. [Filing No. 16 at 6-7.] The Commissioner responds that the ALJ inquired regarding Mr. Kelley's use of prescription and non-prescription medications, and adequately explained her credibility determination which

---

[5] For example, the Court acknowledges that the ALJ explained why she was giving no weight to Dr. Gregori's opinion and little weight to Dr. Taylor's opinion. [*See* Filing No. 14-2 at 19-20.] But this discussion was limited to Mr. Kelley's abilities, and did not address exam findings which supported Mr. Kelley's claim that he met Listing 1.04. [*See* Filing No. 14-2 at 19-20 (rejecting Dr. Gregori's opinion that Mr. Kelley was totally and permanently disabled, but not addressing exam findings that related to Listing 1.04 criteria; and (2) giving limited weight to Dr. Taylor's opinions regarding how long Mr. Kelley could sit, stand, and walk, but not addressing evidence relating to Listing 1.04 criteria).]

was based on many other factors. [Filing No. 21 at 22-23.] In his reply, Mr. Kelley reiterates his argument that the ALJ never asked why Mr. Kelley was not fully compliant with his medications. [Filing No. 23 at 6-7.] The Court notes that a credibility determination by the ALJ is given "considerable deference." *Prochaska*, 454 F.3d at 738. The ALJ's credibility determination will be reversed only if she fails to base the determination on grounds that are reasonable or supported by the evidence of record. *See Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). Additionally, the Court recognizes that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). On remand, the ALJ should consider whether she complied with this standard.

In connection with the third issue, the adequacy of the ALJ's RFC determination, Mr. Kelley argues that the ALJ only discussed evidence which supported her RFC determination, and misinterpreted a post-surgery MRI, ignored a CT scan indicating potential nerve impingement and decreased reflexes and sensation, and ignored records from visits with Dr. Taylor and Dr. Gregori which indicated a lack of reflexes, difficulty ambulating, weakness, pain, and an antalgic gait. [Filing No. 16 at 7-9.] The Commissioner responds that the ALJ provided adequate reasons for rejecting Dr. Gregori's opinion, including that he opined Mr. Kelley was permanently disabled which is a determination reserved for the Commissioner, that his opinion was tentative, and that his opinion was not supported by, and was inconsistent with, other medical evidence. [Filing No. 21 at 16-18.] The Commissioner also argues that the ALJ adequately explained why she gave limited weight to Dr. Taylor's findings. [Filing No. 21 at 19.] In his reply, Mr. Kelley reiterated his arguments and noted that Dr. Taylor treated him longer than any other medical professional. [Filing No. 23 at 7-9.] While the ALJ need not address every piece of evidence that has been

12

presented, she must set forth a logical bridge between the evidence and the conclusion so that the Court can assess the validity of the ultimate findings and the claimant can obtain meaningful judicial review. *Craft*, 539 F.3d at 673. Additionally, the ALJ may not analyze only the evidence that supports her ultimate conclusion; if contrary evidence exists, the ALJ must confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citations omitted). On remand, the ALJ should ensure that she considers all evidence and builds a logical bridge from that evidence to her conclusion.

### IV.
#### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Mr. Kelley benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). The Court notes that on remand, the ALJ must adequately address whether Mr. Kelley meets or medically equals Listing 1.04, and must ensure that she adequately explained her credibility determination and her RFC determination.

Date: March 27, 2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**